UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

STEVEN I. MALDONADO,

         Petitioner,

vs.                                      Civ. No. 20-507 MV/GJF

FNU MARTINEZ, *Warden*, and
RAÚL TORREZ, *Attorney General*
*of the State of New Mexico*,

         Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court[1] on Petitioner's *pro se* "PETITION Under 28 U.S.C. 2254 for a Writ of Habeas Corpus" ("Petition") [ECF 27], Respondent's Answer [ECF 37], and Petitioner's Reply [ECF 39].[2] Having carefully reviewed the briefing, the voluminous record, and being fully advised, this Court recommends the Petition be **DENIED** for the reasons that follow.

## I.      BACKGROUND

On November 22, 2013, Petitioner was charged with two counts of first-degree criminal sexual penetration of a minor, four counts of second-degree criminal sexual contact of a minor, and three counts of third-degree criminal sexual contact of a minor. ECF 37-1, Ex A. On March

---

[1] Senior U.S. District Judge Martha Vázquez referred this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend an ultimate disposition of the case. *See* ECF 32. The undersigned has concluded that no evidentiary hearing is required or permitted. *See* 28 U.S.C. § 2254(e)(2).

[2] Petitioner's reply, mistitled a response, also included a request that the Court wait for 30 days to make a ruling. ECF 39. The Court grants this request *nunc pro tunc*. Petitioner later filed a motion for a status conference. ECF 40. Because this PFRD recommends denying the Petition, the Court denies this motion as moot.

21, 2017, Petitioner entered into a Repeat Offender Plea and Disposition Agreement, under which he pled no contest to the two counts of first-degree criminal sexual penetration of a child under 13 years of age (Counts 1 and 2) and one count of third-degree criminal sexual contact of a minor (Count 7).  In exchange, the State agreed to dismiss the remaining six counts.  ECF 37-1, Ex. G at 10-11.

At the recorded plea hearing one day earlier, Judge J.C. Robinson confirmed that Petitioner had read and signed the agreement; discussed it with his counsel, Stacey Ward; and understood it.  ECF 38, Ex. A, Mar. 20, 2017 Plea Hr'g Tr., at 3:31:30–3:32:44.  Petitioner told Judge Robinson that he understood that as a result of his plea, he could be fined and sentenced to up to 42 years in prison.[3]  *Id.* at 3:32:53–3:33:14.  He also said that he understood that he was waiving his rights to (1) a jury trial; (2) assistance of counsel at trial; (3 confront and cross-examine the witnesses against him; (4) present evidence and have the State compel witnesses to appear and testify; and (5) remain silent with a presumption of innocence until proven guilty beyond a reasonable doubt.  He told the judge that he wanted to give up those rights and proceed with his plea.  *Id.* at 3:33:23–3:34:09.

Petitioner also admitted that there was sufficient evidence with respect to Counts 1, 2, and 7 that, if believed by a jury, could result in convictions.  *Id*. at 3:34:14–3:34:27.  He stated that no promises were made outside of the plea agreement to secure his plea, he was not threatened, and his pleading was free and voluntary.  *Id.* at 3:34:30–3:34:42.  Petitioner then pled no contest

---

[3] The terms of the plea agreement specified "a cap of twenty (20) years for initial incarceration, with the remainder of sentence suspended." ECF 37, Ex. G at 011.

to Counts 1, 2, and 7.  Judge Robinson accepted the plea as knowing, voluntary, and intelligent before referring the matter to Judge Jennifer DeLaney for disposition. *Id.* at 3:34:49–3:35:12.

On June 2, 2017, Stacey Ward moved to withdraw as Petitioner's counsel due to a conflict of interest. ECF 37-1, Ex. H. The conflict arose when Petitioner expressed a desire to withdraw his plea and argue that he was pressured to take the deal, whereas Ms. Ward was present throughout the proceedings and believed no one pressured her client into his plea deal but instead only advised him on the pros and cons of the deal. *Id.*  The state court granted counsel's motion to withdraw, and Petitioner's new counsel then moved to withdraw Petitioner's plea, asserting that (1) Ms. Ward had pressured Petitioner into entering it; (2) Petitioner was not "properly advised" of the consequences of pleading; and (3) Petitioner did not understand his rights. ECF 37, Ex I, Ex. J at 25-26.

At the hearing on the motion to withdraw the plea, Petitioner testified that he told Ms. Ward "over and over and over" that he wanted to proceed to trial and claimed that she did not "fully explain the terms of taking the plea and what it meant."  ECF 38, Ex. A, Nov. 30, 2017 Mot. Hr'g Tr. at 12:41:56–12:42:18.  He said that he felt pressure from Judge Robinson because the judge "recommend[ed] that [Petitioner] take [his] lawyer's advice." *Id.* at 12:43:09–12:43:21. According to Petitioner, when asked whether his plea was voluntary, he "didn't really answer [and instead] said, "No, I don't agree," " but under [his] breath[.]" *Id.* at 12:43:30–12:43:40; 1:02:42–1:02:55. He further maintained that it was the prosecutor who told Judge Robinson that the plea was voluntary. *Id.* at 12:43:43–12:43:49.  Petitioner nonetheless conceded that he took no steps to attempt to correct the record during the plea hearing.  *Id.* at 1:02:56–1:03:05.

3

On cross-examination, Petitioner admitted that he understood, among other things, that under the plea agreement he faced a maximum term of 20 years imprisonment, whereas if he had gone to trial and been convicted of all nine counts charged, *see* ECF 37, Ex. A at 1-2, he could have served up to 80 years. ECF 38, Ex. A, Nov. 30, 2017 Mot. Hr'g Tr. at 12:44:30–12:46:22. He said that he responded in the affirmative when Judge Robinson asked if he understood and was ready to give up each of the rights he was waiving because Ms. Ward "advised [him] to." *Id.* at 12:48:44–12:50:10. He denied having been promised any rewards, payments, or favors in exchange for his plea. *Id.* at 1:00:30–1:00:43.

When asked for specifics as to how he had been pressured, Petitioner said that Ms. Ward did not threaten him, but used such "scare tactics" as explaining that (1) if convicted at trial, his exposure would have been much greater than it was under the plea agreement; (2) a jury would not believe, as he was claiming, that his statement to police was coerced; and (3) three victims could be testifying at trial "when paperwork show[ed] only one victim."[4] ECF 38, Ex. A, Nov. 30, 2017, Mot. Hr'g Tr., at 12:51:15–12:53:42. He also insisted that the families of the victims, including his cousin and an uncle of one of the victims, Manuel Maldonado, had threatened him with physical harm if he did not go to prison. *Id.* at 12:58:57–1:00:30, 1:00:48–1:01:24; Ex U at 102; Ex V at 114; Ex A2 at 262, 264.

After the hearing and review of the record, Judge DeLaney denied the motion. She found that (1) both Ms. Ward and Judge Robinson had explained to Petitioner the consequences of

---

[4] Though Counts 1 and 7 named "Jane Doe #1" as the victim, and Count 2 named "Jane Doe #2," Counts 3-5, which were dismissed as part of the plea agreement, named "John Doe." ECF 37, Ex. A at 001-002.

changing his plea; (2) Judge Robinson confirmed that Petitioner understood the rights he was waiving by pleading; (3) notwithstanding Petitioner's later claim that he pled because Manuel Maldonado had threatened him, Petitioner initially told Judge Robinson that nobody had threatened or used force against him, and that he was pleading voluntarily; (4) Ms. Ward's advice to enter a plea, based partly on the possible consequences of proceeding to trial and losing, did not amount to a "scare tactic[;]" and (5) the plea was "validly obtained." *See generally* ECF 37-1, Ex. L.

On August 8, 2018, Petitioner was sentenced to a 42-year term of imprisonment, with all but 20 years suspended, *see* ECF 37-1, Ex. R at 77. Shortly before sentencing, Petitioner filed the first of five *pro se* state habeas petitions, asserting, as is relevant here, that Ms. Ward used "psychology/mind games/my religion" to coerce a plea. ECF 37-1, Ex. N; Ex. O at 38. After the district judge dismissed the petition, *see* ECF 37-1, Ex. Q, the New Mexico Supreme Court denied Petitioner's petition for a writ of certiorari. ECF 37-1, Ex. S and T.

Petitioner filed his second state habeas petition on May 30, 2019, alleging "misconduct/ineffective assistance of counsel[,]" and also that Manuel Maldonado had tampered with "typed transcripts[.]" ECF 37-1, Ex. U at 102. Judge DeLaney denied this petition on July 30, 2019, and the New Mexico Supreme Court again denied Petitioner's petition for a writ of certiorari by Order of October 16, 2019. ECF 37-2, Ex. V–X.

After the district judge dismissed petitioner's third petition challenging the results of one of the victim's sexual abuse examinations, Petitioner made multiple requests for transcripts, recorded interviews, laboratory reports, and police reports. ECF 37-2, Ex. E1, I1, J1, L1–R1. Petitioner sought mandamus relief from the state district court on September 30, 2020, asking

5

to be provided with his "full discovery/record proper." ECF 37-2, Ex. S1 at 221; *see also* ECF 37-2, Ex. X1. He also moved for Judge DeLaney's recusal. ECF 37-2, Ex. B1.

In response to the records requests, the district court clerk mailed Petitioner the record proper, and Sixth Judicial District Court Monitor, Felicia R. Ortiz, sent him audio CDs from 14 different hearings. ECF 37-2, Ex. K1 and V1. In response to a previous records request, Ms. Ortiz explained to Petitioner that she had provided him with a complete audio recording of the plea hearing and that the court does not record the settlement negotiations that took place as part of the settlement facilitation proceeding before the plea hearing. ECF 37-2 at 90.

On November 13, 2020, Petitioner filed his fourth state habeas petition, citing to an error in the sentencing transcript that indicated Petitioner was sentenced to two years. ECF 37-2, Ex. W1 at 233. After review of the hearing recording that clearly stated Petitioner was going "to department of corrections for a twenty-year period," Judge DeLaney dismissed the petition on March 10, 2021, and the state supreme court denied Petitioner's petition for a writ of certiorari on April 27, 2021. ECF 37-2, Ex. Z1; A2; C2.

More than three years after the entry of his judgment and sentence, Petitioner filed a Notice of Appeal, *see* ECF 37, Ex. D2, as well as an informal docketing statement, in which he contended, in pertinent part, that when he requested a copy of the recording from his March 20, 2017 plea hearing, "the Sixth Judicial Court Monitor removed it from the record[.]" ECF 37, Ex. E2 at 349. The New Mexico Court of Appeals ultimately dismissed Petitioner's appeal. ECF 37, Ex. C3.

On February 14, 2022, Petitioner filed his fifth and final state habeas petition, accusing Judge DeLaney of tampering with public records, in violation of NMSA 1978, § 30-26-1 and his

constitutional right to due process.  ECF 37, Ex. G2 at 361-362.  Specifically, Petitioner charged that "Judge Jennifer E. Delaney changed my statement in my first writ of habeas corpus on March 16, 2018[.]"  *Id.* at 361.

Judge DeLaney recused herself and Judge Tom F. Stewart dismissed the petition for raising arguments that were previously denied or waiving arguments by failing to raise them in previous habeas proceedings. ECF 37, Ex. Q2; R2; B3.  Petitioner did not seek discretionary review of this dismissal.

On May 26, 2020, Petitioner filed his initial 28 U.S.C. § 2254 petition in this Court. ECF 1. He amended his Petition on June 17, 2022.  ECF 27.

## II.    CLAIMS PRESENTED

In the amended petition, Petitioner asserts three grounds for habeas relief:

A.  "Judge Jennifer E. Delaney [t]ampered and [c]hanged my statement on Writ of Habeas Corpus file." ECF 27 at 6.

B.  Ineffective assistance of counsel for pressuring him to take the plea deal. ECF 27 at 8.

C.  "Court Monitor [r]emoved the record of the plea proceeding taken testimony argument of Counsels and Judge J[C] Robinson after Judge Jennifer E. Delany [r]evi[e]wed it on 11-30-17 and dismiss[ed] a Motion to Revoke the plea on 12/18/17." ECF 27 at 11.

## III.    APPLICABLE LAW

In this section, the Court sets forth the congressionally mandated legal standard for federal review of state criminal convictions, as that standard has been interpreted by the Supreme Court and Tenth Circuit. The Court will include in its individual analysis of

Petitioner's claims the substantive legal standard that governs each of those claims.

### A.     The AEDPA

The "AEDPA requires that [courts] apply a difficult to meet and highly deferential standard in federal habeas proceedings under 28 U.S.C. § 2254; it is one that demands that state-court decisions be given the benefit of the doubt." *Simpson v. Carpenter*, 912 F.3d 542, 562 (10th Cir. 2018) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)) (internal quotation marks omitted). "[T]he standard of review applicable to a particular claim depends upon how that claim was resolved by the state courts." *Cole v. Trammel*, 735 F.3d 1194, 1199 (10th Cir. 2013), *superseded after rehearing by* 755 F.3d 1142, 1146 (10th Cir. 2014). "When a petitioner includes in his habeas application a 'claim that was adjudicated on the merits in State court proceedings,' a federal court shall not grant relief on that claim unless the state-court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Simpson*, 912 F.3d at 562 (quoting 28 U.S.C. § 2254(d)(1)–(2)).

To determine "whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact," a federal habeas court must "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191–92 (2018) (internal quotations and citations omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its

decision on the merits in a reasoned opinion. In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* at 1192. Review becomes more difficult, however, when a state court fails to accompany its decision with a reasoned opinion. In such an instance, a federal habeas court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id.*

Once a federal habeas court locates the relevant rationale, it then can determine whether the decision was contrary to or an unreasonable application of Supreme Court law. A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). This does not require the state court to cite applicable Supreme Court precedent or even demonstrate an "*awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradict them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).

A state court decision is an "unreasonable application" of Supreme Court law if the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407–08. Courts apply this objective unreasonableness inquiry "in view of the specificity of the governing rule: 'The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" *Simpson*, 912 F.3d at 563 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). If, however, "a legal rule is specific, the range may be narrow"; thus, "[a]pplications of the rule may

be plainly correct or incorrect." *Yarborough*, 541 U.S. at 664. It is also important to note that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410 (emphasis in original). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"; instead "that application must also be unreasonable." *Id.* at 411.

### B.   Exhaustion and Procedural Default

"A state prisoner generally may not raise a claim for federal habeas corpus relief unless he 'has exhausted the remedies available in the courts of the State.'" *Selsor v. Workman*, 644 F.3d 984, 1026 (10th Cir. 2011) (quoting 28 U.S.C. § 2254(b)(1)(A)). Exhaustion requires that a state prisoner pursue his claims "through 'one complete round of the State's established appellate review process,' giving the state courts a 'full and fair opportunity' to correct alleged constitutional errors." *Id.* (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). In other words, "a state prisoner seeking federal habeas relief generally must have first submitted each of his claims to the State's highest court." *Jernigan v. Jaramillo*, 436 F. App'x 852, 855 (10th Cir. 2011) (unpublished) (citing *O'Sullivan*, 526 U.S. at 845; 2 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 23.3 [b], at 1205–06 (6th ed. 2011) ("[T]he petitioner satisfies her exhaustion burden by raising a claim at all stages of the state's appellate review process (including discretionary state appeals).")).

When an applicant has failed to exhaust, however, and the petition includes a combination of exhausted and unexhausted claims, the petition is described as "mixed" and

options available to the federal habeas court include:

    (a)    dismissing the petition in its entirety;

    (b)    staying the petition and holding it in abeyance while the applicant returns to
           state court to raise any unexhausted claim or claims;[5]

    (c)    allowing the applicant to dismiss the unexhausted claim or claims and
           proceed with any claims for which state-court remedies have been
           exhausted; or

    (d)    ignoring the exhaustion requirement altogether and denying the petition for
           lack of merit.

See Fairchild v. Workman, 579 F.3d 1134, 1156 (10th Cir. 2009) (citations omitted).

    With respect to option (d), the federal habeas court may address the substance of the

petition—rather than compel complete exhaustion—if it is convinced that "the applicant does

not even raise a colorable federal claim," and therefore interests of comity and federalism are

better served by an immediate consideration of the merits.  See Granberry v. Greer, 481 U.S.

129, 134-35 (1987).  Thus, 28 U.S.C. § 2254(b)(2) "allows federal district courts entertaining

habeas petitions [that] contain unexhausted claims to address those claims if they can be decided

on their merits against the petitioner."  Rudolph v. Galetka, 208 F.3d 227, *1 (10th Cir. 2000)

(unpublished).

    An important corollary to the exhaustion requirement is the doctrine of procedural

default, which "prevents a federal court from reviewing 'the merits of a claim—including

constitutional claims— that a state court declined to hear because the prisoner failed to abide

---

[5] Because "granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts[,]" *Rhines v. Weber*, 544 U.S. 269, 277 (2005), a federal court should not choose option (b) without first determining that (1) the petitioner had good cause for his failure to exhaust; (2) the unexhausted claims are potentially meritorious; and (3) the petitioner did not engage in intentionally dilatory litigation tactics. *Id*. at 277-78.

by a state procedural rule.'" *Williams v. Trammell*, 782 F.3d 1184, 1212 (10th Cir. 2015)

(quoting *Martinez v. Ryan*, 566 U.S. 1, 9 (2012)); *see also Power v. Santistevan*, No. CV 19-

1055 KWR/SCY, 2023 WL 3230522, at *4 (D.N.M. May 3, 2023), *R&R adopted*, 2023 WL

4248175 (D.N.M. June 29, 2023). "The state procedural rule at issue must be 'adequate and

independent.'" *Casaus v. Hatch*, No. CV 20-1269 WJ/KK, 2023 WL 6805727, at *3 (D.N.M.

Oct. 16, 2023) (quoting *Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011)). "A state

procedural rule is independent if it relies on state law, rather than federal law, and is adequate

if it is firmly established and regularly followed." *Id.* (quoting *Fontenot v. Crow*, 4 F.4th 982,

1028 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 2777 (2022)) (quotation marks omitted).

Under this doctrine, unless a petitioner can show (1) cause for the default and actual

prejudice resulting from the alleged violation of federal law; or (2) that a fundamental

miscarriage of justice will occur if the defaulted claims are not considered, *see Coleman v.

Thompson*, 501 U.S. 722, 750 (1991), "federal courts generally decline to hear any federal

claim that was not presented to the state courts 'consistent with [the State's] own procedural

rules.'" *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) (quoting *Edwards v. Carpenter*, 529 U.S.

466, 453 (2000)).

## IV.   ANALYSIS

### A.   Ground 1: Allegation that State Judge Tampered with Record

The Court liberally construes the Petition to claim that the state habeas judge tampered

with Petitioner's statements or removed Petitioner's original counsel's arguments from a plea

proceeding record. ECF 27 at 5, 53. Respondent argues that this claim for habeas relief should

fail because Petitioner has not pointed to any Supreme Court authority demonstrating clear legal

error by the state court or provided any evidence the state court made clear factual error. Respondent further contends that this claim is procedurally barred because Petitioner only raised it in his fifth habeas petition. ECF 37 at 18-25. The Court agrees with Respondent on all three bases.

First, the records before this Court do not demonstrate that the trial judge removed or tampered with the state court record, and Petitioner has offered no evidence of this. In his Reply, Petitioner states that "[t]he Letter from Felicia R. Ortiz Marked 196 in red stat[e]s" that "the settlement facilitation [p]roceeding" "is not made part of the record." ECF 39 at 1. Petitioner is most likely referring to ECF 37-2 at 90, which is a letter from Ms. Ortiz stating the state court audio-records the plea proceedings but not the settlement discussions preceding it. Petitioner argues that not recording the settlement discussions violates NMRA, Rule 5-304 (H), which provides that a "plea and disposition agreement or a conditional plea shall be submitted substantially in the form approved by the Supreme Court." Petitioner has not only failed to show that not recording the settlement discussions was a violation of this procedural rule, but he has also certainly not shown that failing to record was a violation of any Supreme Court precedent that would entitle him to habeas relief under the AEDPA.

Additionally, as the state court already found, Petitioner procedurally defaulted on this argument by raising it only in his fifth petition for habeas relief. *See, e.g.,* ECF 37-1, Ex. N (first petition that does not allege the judge tampered with the state court record). Because Petitioner failed to make this particular argument in any of his first four petitions for habeas relief—all of which addressed the exact same issue of withdrawing his guilty plea—the state court properly

13

rejected his petition under NMRA Rules 5-802(H)(2)(b)) and 5-802(I).  ECF 37-3, Ex. B3 at 479-

80.  Rule 5-802(I)(2) authorizes a state habeas court to "dismiss any claim not raised in a prior

petition unless fundamental error has occurred, or unless an adequate record to address the claim

properly was not available at the time of the prior petition[.]"  Neither of those exceptions applies

here. Petitioner failed to raise this argument in any of his first four habeas petitions addressing

the identical issue of his attempted withdrawal of his guilty plea and, thus, the district court

properly and summarily dismissed it under Rule 5-802(I)(2).

Petitioner also did not petition for a writ of certiorari after his fifth petition was dismissed.

This omission is an additional failure to exhaust that procedurally bars the claim.  *See Dever v.

Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994) ("The exhaustion requirement is

satisfied if the federal issue has been properly presented to the highest state court, either by direct

review of the conviction or in a postconviction attack.").  For these two reasons, Petitioner cannot

avoid a procedural bar unless he has shown cause for the default and resulting prejudice, or that a

fundamental miscarriage of justice will occur if this Court does not consider his defaulted claims.

He has not even attempted to make such a showing.

### B.      Ground 2, Ineffective Assistance of Counsel

Petitioner alleges that he was denied effective assistance of counsel. ECF 27 at 7. Petitioner

raised this argument repeatedly in state court, and it was denied at every turn. In lieu of any

argument supporting his position, Petitioner merely cites this Court to the "Order Denying Writ of

Mandamus and Motion for Court Records and Discovery # 3 to 16 then 21 to 27 and highlighted."

*Id.* The state district court's Order Denying Petition for Writ of Mandamus and Motions for Court

Records and Discovery is part of this Court's record at ECF 37-2, Ex. T1. In Paragraphs 3 through

14

16 and 21 to 27 of that order, the district court chronicles the multiple instances in which Petitioner's argument of being coerced by his attorney and others into accepting his plea were rejected. ECF 37-2, Ex. T1. The Court liberally construes the Petition to allege once again that Petitioner's counsel coerced him to take his plea deal.

Respondent argues that Petitioner voluntarily accepted the plea after his counsel provided him adequate advice. Respondent further asserts that the state court properly rejected this argument numerous times over. The Court agrees with Respondent.

The Sixth Amendment to the United States Constitution guarantees Petitioner the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). For federal habeas petitions brought under 28 U.S.C. § 2254(d), *Strickland* is clearly established federal law. *See Williams*, 529 U.S. at 390 ("It is past question that the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'"). To succeed under *Strickland*, Petitioner must show both that "counsel's representation fell below an objective standard of reasonableness" and "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687–88. Courts "may address the performance and prejudice components in any order, but need not address both if [the petitioner] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292–93 (10th Cir. 1998).

To establish the first prong, a petitioner must overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen*, 563 U.S. at 189 (2011) (quoting *Strickland*, 466 U.S. at 690). This requires the petitioner to establish that the "attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common

custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

To satisfy the second prong, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In the context of a change of plea, the question becomes "whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, . . . the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

"Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, . . . and when the two apply in tandem, review is doubly so." *Howell v. Trammell*, 728 F.3d 1202, 1223 (10th Cir. 2013) (quoting *Harrington*, 562 U.S. at 105) (internal citations and quotations omitted). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

Petitioner repeatedly argued that he was coerced into taking his plea deal in his motion to withdraw plea, multiple state habeas petitions, and related petitions for certiorari. The state court rejected this argument at every turn. The state court repeatedly found, and the recordings of the plea hearing show, that he voluntarily pled guilty and accepted the plea deal that ultimately

led to his sentence after adequate, noncoercive advice from his counsel. Petitioner's vague citation to the state court's order denying him mandamus relief and his motion for court records does nothing to demonstrate that the state court's repeated legal and factual conclusions from multiple different judges were unreasonable under § 2254(d). This claim, although fully exhausted, should be denied.

### C.      Ground 3: Allegation that Court Monitor Tampered with Record

Petitioner finally alleges that the court monitor removed the record of the plea proceeding after the judge reviewed it to deny his motion to revoke the plea. ECF 27 at 10. Respondent argues that there is no evidence of this considering the plea hearing is part of the record and was sent to the Petitioner. ECF 37 at 24. Petitioner replies that the court monitor removed the recording of the plea negotiations from the settlement facilitation proceeding, which he contends violates NMRA Rule 5-304. ECF 39. The Court rejects this argument.

First, the records before this Court do not demonstrate that the monitor removed or tampered with the state court's records. In the letter to which Petitioner cites, ECF 37-2 at 90, Court Monitor Ortiz advised that the state court audio-records the plea hearing but not the settlement discussions preceding it. Additionally, the Order Denying Motion to Withdraw Plea, ECF 37-1 at 28, supports this assertion. That order only references that the facilitation proceeding occurred. Then the order discusses the recording of the actual plea hearing where Petitioner stated he understood the plea and was properly advised by his counsel. The order does not discuss a recording of the facilitation proceeding. *See, e.g.,* ECF 37-1, Ex. L.

As discussed above, Petitioner has made no showing that it was unreasonable legal error for the state court to not record the settlement facilitation proceeding. Petitioner argues that not

recording that proceeding violates NMRA, Rule 5-304 (H), which states "[a] plea and disposition agreement or a conditional plea shall be submitted substantially in the form approved by the Supreme Court." Petitioner has failed to show that recording the change of plea proceeding but not the settlement facilitation process that preceded it was a violation of this procedural rule. Moreover, Petitioner has certainly failed to show that it was a violation of any federal Supreme Court precedent that would entitle him to habeas relief under the AEDPA. This claim should be denied.

## V.     CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** the Petition be **DENIED** and these proceedings dismissed with prejudice. The Court also **RECOMMENDS** that a certificate of appealability be **DENIED**.

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**